IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RUBY TERESA GARCIA,<br><br>Defendant. | **MEMORANDUM DECISION REGARDING RESTITUTION**<br><br>Case No. 2:05-CR-00827 PGC |

This case illustrates the need to reform our federal restitution statutes. Defendant Ruby Garcia assumed the identity of a victim (who will be called "H.F." here) by ordering credit cards in H.F.'s name. Ms. Garcia then ran up thousands of dollars in charges on these and other cards. While Ms. Garcia was quickly caught, the damage to H.F. was substantial. Although she was not liable for charges on the cards (the banks involved suffered that loss), it took H.F. considerable time and emotional energy to clear her credit. Because H.F. is, in her words, "a working mother and wife," time is "the most precious thing [she] has." Yet the court is without power to order any restitution for her lost time — in other words, the court is powerless to make H.F. whole for her losses from the crime committed against her. Because the court's inability to provide full restitution here is a recurring problem, a short opinion describing the problem is appropriate.

## FACTUAL BACKGROUND

In this case, police began investigating defendant Garcia after an informant reported that she and her two sons were obtaining personal information by stealing mail and burglarizing vehicles. According to the informant, Ms. Garcia used the stolen personal information to obtain fraudulent credit cards. She then either sold the cards for cash or drugs, or used them to purchase merchandise over the Internet. The informant, in cooperation with the police, purchased a fraudulent credit card from Ms. Garcia. The card was in the name of Ms. Garcia's neighbor, who had previously reported her mail as stolen.

The police ultimately obtained a search warrant for Ms. Garcia's apartment. Police officers searched the apartment and found driver's licenses, social security cards, and credit card numbers of persons not living there. After the officers arrested Ms. Garcia, she admitted ordering credit cards in the victims' names. Ms. Garcia had compromised the personal information of at least four victims and had run up false credit charges of more than $6,000.

On February 6, 2006, Ms. Garcia pled guilty to two counts of aggravated identity fraud.[1] Under a law recently passed by Congress, this offense carries a mandatory minimum sentence of two years in prison.[2] The court, therefore, sentenced Ms. Garcia to the required two-year prison term.

---

[1] *See* 18 U.S.C. § 1028A (Supp. 2006).

[2] *See* Identity Theft Penalty Enhancement Act, Pub. L. No. 108–275, § 2(a), 118 Stat. 831, 831 (2004) (codified at 18 U.S.C. § 1028A).

At the sentencing hearing, the court was also required to consider what restitution was appropriate. Of course, the banks that suffered financial losses should receive restitution, so the court ordered Ms. Garcia to pay restitution of $539.51 to Capital One and $6,299.01 to GE Consumer Finance.

The issue then arose as to what restitution H.F should receive. Because the banks had absorbed the loss from the phony credit cards, H.F.'s direct out-of-pocket loss from the identity fraud was zero. But she also suffered other losses. While H.F. was at the gym early one morning, her car was vandalized and her purse was stolen. In her letter to the court, H.F. detailed the items taken, including her charge cards, driver's license, social security card, various membership cards, gift certificates, and work keys. H.F. estimated the replacement cost of the stolen possessions to be $1000 and the damage to her vehicle from the break-in to be $1500. In addition to attempting to replace her stolen cards, H.F. also had to deal with fraudulent charges incurred on her VISA card, and had to close a checking account as a result of the theft. And H.F. lost her confidence and peace of mind:

> For several months after my purse was stolen, I worried that whoever may have ended up with my personal information and possessions would want to know more about me or victimize me further by coming to my home and breaking in to take things or worse, to harm me or my family. For a while I pleaded with my husband to have the locks changed and wanted to rent a mailbox at the post office rather than have mail sent to our home. My desire to take these actions was instigated by fear. . . . I feel I will never feel secure as I will always wonder if my personal information was distributed and if so, to whom, and what they plan to do with it. I have several reminders on my calendar at work to request credit reports and to follow up with utility and phone companies quarterly to ensure my identification is not being used to establish new service that will most likely never be paid, and will ultimately affect me adversely. I worry that one day I will be notified that a large amount of debt, of which I know nothing, has been attributed to me. It is unsettling to feel that someone may be out in the world pretending to be me, using my good

name and my credit, in a criminal way, and that their actions, which are not in my control, will be blamed on me.

Finally and most importantly, H.F. suffered a loss of what she called her "most precious thing" — her free time. H.F. had to devote considerable efforts to clearing her credit, time that was hard to come by because she was a wife and a "working mother" with two children. H.F. wrote of the "significant" amount of precious time she spent "correcting the wrong done to me by Ruby Garcia."

The kinds of losses H.F. suffered were appreciated by Congress in enacting the new identify fraud penalties. Congress realized the tremendous harm that identity theft can inflict on a victim. As one of the legislation's co-sponsors, Representative Lamar Smith, explained,

> Once an identity [thief] has the personal information of another, the possibilities for abuse are endless. Identity thieves often open up credit cards or bank accounts in another person's name, go on spending sprees, and leave the victim with damaged credit. Identity theft is a serious crime and should be punished accordingly.[3]

This crime necessarily harms victims severely, "A victim of identity theft usually spends a year and a half working to restore his or her identity and good name."[4]

In light of these concerns, the court raised with counsel the question of what restitution should be paid to H.F. Ms. Garcia agreed to pay $2,500 to H.F. — $1,000 to cover the cost of replacing the items stolen from H.F. and $1,500 to cover the cost of repairing the damage to H.F.'s car from the break-in. The court ordered this restitution only because the defendant had agreed to make it. (As will be explained shortly, the current restitution law does not permit the

---

[3] H.R. REP. NO. 108-528, at 51 (2004) (statement of Rep. Smith).

[4] *Id.* at 50 (statement of Rep. Schiff).

court to order such restitution if the defendant objects.)  But because of the current restitution laws, the court could not order any restitution for H.F.'s lost time.  In other words, the court was unable to fully compensate H.F. for the losses that she suffered as a result of the crime.

## LIMITATIONS ON THE COURT'S ABILITY TO AWARD RESTITUTION

The problem the court encountered in the Garcia case is hardly unique, as current law severely restricts the ability of federal trial judges to award proper restitution.  The Supreme Court has held that a district court's power to order restitution must be conferred by statute.[5]  The main federal restitution statutes — 18 U.S.C. § 3663 and § 3663A — permit courts to award restitution only for several particular kinds of loss; specifically, restitution for loss of property, medical expenses, physical therapy, lost income, funeral expenses, and expenses for participating in all proceedings related to the offense.  The statutes, however, fail to give judges more general authorization to award restitution to crime victims.

As a result of these limits, the federal statutes unfairly tie the hands of judges in crafting restitution orders.  In this case, for example, there was no authority for the court to award H.F. restitution for her time lost in clearing her credit record, and no authority to award restitution for the cost of repairing her car or replacing her stolen property.  Not only is the statute clear on this point, but case law has explicated that courts lack authority to give victims restitution for

---

[5] *Hughey v. United States*, 495 U.S. 411, 415–16 (1990); *see also United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) ("It is well-established that a federal court may not order restitution except when authorized by statute."); *United States v. Helmsley*, 941 F.2d 71, 101 (2d Cir. 1991) ("Federal court have no inherent power to order restitution.  Such authority must be conferred by Congress.").

consequential losses[6] or other losses deemed to be too remote from the offense of conviction.[7] For example, the Seventh Circuit recently rejected the position of a victim of identify theft that she was "entitled to reimbursement for all the time she spent in [the] endeavor" of clearing her credit because it would take the restitution statutes "too far."[8]

Cases from around the country demonstrate that the current statutory scheme frequently blocks judges from awarding full and fair restitution. Courts of appeal have often overturned restitution awards that district judges thought were appropriate, not because of any unfairness in the award or problems in proving the loss, but solely because the current restitution statutes technically fail to provide authorization. For example, in *United States v. Reed*,[9] the trial court ordered restitution to victims whose cars were damaged when the defendant, an armed felon, fled from police in a high speed chase. The Ninth Circuit reversed the restitution award because the defendant was convicted of being a felon in possession of a firearm and the victims were not victimized by *that* particular offense.[10]

---

[6] *See United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996).

[7] *See, e.g.*, *United States v. Barany,* 884 F.2d 1255, 1260 (9th Cir. 1989) (victim's attorney's fees too remote); *United States v. Kenney*, 789 F.2d 783, 784 (9th Cir. 1986) (wages for trial witnesses too remote).

[8] *United States v. Havens*, 424 F.3d 535, 539 (7th Cir. 2005).

[9] 80 F.3d 1419 (9th Cir. 1996).

[10] *Id.* at 1421.

In *United States v. Sablan*,[11] a defendant was convicted of computer fraud, and the district court ordered restitution, including consequential damages of $5,350 incurred by the victim. The Ninth Circuit reversed the part of the restitution order based on consequential damages, such as expenses arising from meeting with law enforcement officers investigating the crime, because such expenses were not strictly necessary to repair the damage caused by the defendant's fraud.[12]

In *United States v. Hayes*,[13] the defendant was convicted of possession of stolen mail; specifically, three credit cards. The trial court ordered him to pay restitution to the credit card companies of $3,255 for charges to those stolen credit cards. The Fifth Circuit reversed because the charges were not caused by the specific conduct that was the basis of the offense of conviction (mail fraud).[14]

In *United States v. Romines*,[15] a defendant on supervised release absconded from his residence and employment, driving away on his employer's motorcycle and later cashing an $8,000 check from his employer's bank account. He was caught and found guilty of absconding from supervised release. The district court then ordered restitution of $8,000 to the employer as part of the sentence. The Eleventh Circuit reversed because the government, rather than the employer, was the victim of the defendant's violation of the release order: "The only victim of

---

[11] 92 F.3d 865 (9th Cir. 1996).

[12] *Id.* at 870.

[13] 32 F.3d 171 (5th Cir. 1994).

[14] *Id.* at 173–74.

[15] 204 F.3d 1067 (11th Cir. 2000).

that crime was the government, whose confidence in [the defendant's] rehabilitation seems to have been misplaced." [16] Accordingly, the Eleventh Circuit overturned the restitution order because "of the absence of textual authority to grant restitution."[17]

In *United States v. Havens*,[18] the defendant pled guilty to various offenses relating to identity theft. The victim had earlier pursued a civil action against the defendant, receiving $30,000 in damages, and the district court ordered restitution in that amount. The Seventh Circuit reversed this restitution order, holding that it was unclear which damages and costs qualified as appropriate losses under the Mandatory Victims Rights Act.[19]

In *United States v. Stoddard*,[20] the trial court ordered substantial restitution by the defendant, an official of a savings bank. The defendant misappropriated $30,000 from an escrow account and used the money to fund two real estate purchases. He subsequently netted $116,223 in profits from the real estate transactions. Although the trial court ordered restitution to the savings bank based on the defendant's profits, the Ninth Circuit set the order aside because the restitution statute only allowed restitution for direct losses.[21]

---

[16] *Id.* at 1069.

[17] *Id.*

[18] 424 F.3d 535 (7th Cir. 2005).

[19] *Id.* at 538–39.

[20] 150 F.3d 1140 (9th Cir. 1998).

[21] *Id.* at 1147.

In *Government of the Virgin Islands v. Davis*,[22] the defendant pled guilty to forgery, conspiracy to defraud, and related counts, in connection with an attempt to defraud an estate of more than a million dollars in real and personal property.  The trial judge ordered restitution, including the attorney's fees spent by the estate to recover its assets.  But the Third Circuit reversed: "Although such fees might plausibly be considered part of the estate's losses, expenses generated in order to recover (or protect) property are not part of the value of the property lost (or in jeopardy), and are, therefore, too far removed from the underlying criminal conduct to form the basis of a restitution order."[23]

Finally, in *United States v. Blake*,[24] the defendant was convicted of using stolen credit cards.  The district court ordered restitution for the losses suffered by the issuers of the credit cards but also ordered restitution to the robbery victims whose credit cards had been stolen.  Even though there was a clear factual connection between Mr. Blake's conduct with regard to the robbery victims and the offense of his conviction, the Fourth Circuit reversed the restitution award to the robbery victims, finding that the conduct underlying the defendant's offense of "use of unauthorized access devices," did not include theft of the credit cards.  The Fourth Circuit reached this conclusion reluctantly:

> Although the result we are compelled to reach represents poor sentencing policy, the statute as interpreted requires the holding that the persons from whom Blake stole the credit cards do not qualify as victims of his offense of conviction, and as such he cannot be ordered to pay restitution to them . . . the factual connection between his

---

[22]  43 F.3d 41 (3d Cir. 1994).

[23]  *Id*. at 47.

[24]  81 F.3d 498 (4th Cir. 1996).

conduct and the offense of conviction is legally irrelevant for the purpose of restitution.[25]

The point here is not that any of these restitution awards were correctly or incorrectly made by the trial judges under the current statutory framework. Instead, the point is that without authority to make these awards, judges are often unable to comply with the congressional mandate for restitution: "to restore the victim to his or her prior state of well-being to the highest degree possible."[26] As the case law makes clear, "the primary and overarching goal" of a restitution order is to "'make victims of crime *whole*, to *fully* compensate these victims for their losses and to restore these victims to their original state of well-being.'"[27] Yet the current statutes do not enable courts to make victims whole. To the contrary, federal crime victims can receive court-ordered restitution only for losses that happen to fall within the particular categories covered by the statute.

At sentencing, a trial judge has full and complete information about the nature of the offense, the effect of the crime on any victims, and the defendant's personal and financial circumstances.[28] When a judge has reviewed all of that information and determined that

---

[25] *Id*. at 506.

[26] *United States v. Hill*, 798 F.2d 402, 405 (10th Cir. 1986) (citing S. REP. NO. 97-532 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536).

[27] *United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004) (quoting *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000)); *see also* 18 U.S.C. § 3771(a)(6) (crime victims have the right to "full and timely restitution as provided in law").

[28] *See* FED. R. CRIM. P. 32(d)(1)(B), (2)(A)(I)–(iii) ("The presentence report must . . . calculate the defendant's offense level and criminal history category; . . . the defendant's history and characteristics, including[] any prior criminal record; the defendant's financial condition; and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or

restitution is appropriate, there should be no further litigation about whether restitution fits into some narrow statutory category. The Judicial Conference recently agreed to support legislation to that effect. At its September 2006 meeting, the Conference explained:

> Currently, there is no authorization under federal law for general restitution to crime victims. A judge may order restitution only if the loss suffered by the victim falls within certain categories specified by statute. On recommendation of the [Criminal Law] Committee, the Judicial Conference agreed to support legislation that would authorize general restitution in any criminal case at the discretion of the judge when the circumstances of the case warrant it.[29]

In this case and in too many others like it, the court is unable to fully "restore the victim[s] to [their] prior state of well-being."[30] Congress has recently acted to punish aggravated identity theft severely by creating mandatory minimum sentences for the crime. But while these changes strongly deter such crimes, they, unfortunately, do nothing to fully compensate the victims who suffer from such crimes. Congress should give federal district court judges the tools we need to fully compensate victims of aggravated identity theft — and victims of all federal crimes. The current federal restitution statutes should be amended to give courts appropriate power to award restitution to victims of federal offenses for all their losses.

DATED this 21st day of March, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

in correctional treatment . . . ."); *see also* FED. R. CRIM. P. 32(c)(B) ("If the law requires restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution.").

[29] JCUS-SEP 06, p. 18.

[30] *Hill*, 798 F.2d at 405 (citing S. REP. NO. 97-532).